UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

BOBBY BOYE,

      Petitioner,

v.

UNITED STATES OF AMERICA

      Respondent.

Civ. No. 16-6024 (FLW)

**OPINION**

**FREDA L. WOLFSON, U.S.D.J**

## I.    INTRODUCTION

Petitioner, Bobby Boye ("Boye"), is a federal prisoner proceeding, through his counsel, with a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the following reasons, Boye's § 2255 motion is denied.

## II.    BACKGROUND AND PLEADINGS

### A. The Underlying Criminal Proceeding

Boye was arrested on June 19, 2014, pursuant to a Criminal Complaint that charged him with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343, and one count of wire fraud, in violation of 18 U.S.C. § 1849. *See United States v. Boye*, Crim. No. 15-196, ECF No. 1. The Complaint alleged that beginning in July 2010, Boye was employed as an international petroleum legal advisor for the Ministry of Finance of "Country A." *Id.*, Attach. B., ¶ 1a. It alleged that in February 2012, Country A solicited bids for a multi-million-dollar contract (the "contract") to provide legal and tax accounting advice and assist with the drafting of tax regulations. *Id.* ¶ 1b. In his role as a legal advisor to Country A, Boye served as a member of the three-person committee responsible for reviewing and evaluating the bids for the

contract. *Id.* In March 2012, Opus & Best Services LLC ("Opus & Best"), of which Boye was the sole member, submitted a bid via email for the contract. *Id.* ¶ 1c. The Complaint alleged that in the bid submitted by Opus & Best, Boye made a number of false representations, including: "falsely claiming that Opus & Best was a legitimate law and accounting firm; and fraudulently failing to disclose his affiliation with Opus & Best, in contravention of the no-conflict of interest bidding requirements." *Id.* ¶ 2. Based largely on Boye's recommendation, Opus & Best was awarded the contract by Country A in June 2012. *Id.* According to the Complaint, Country A wired a total of $3,150,000 in contract payments to Opus & Best "which Boye diverted to his own personal use to purchase numerous assets." *Id.* ¶ 3.

On April 28, 2015, petitioner waived indictment and agreed to plead guilty to a one-count Information for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1843 and 18 U.S.C. § 1849. *See* Crim. No. 15-196, ECF Nos. 19-23. The plea agreement included a stipulation that Boye's offense level under the United States Sentencing Guidelines would be 24. Crim. No. 15-196, ECF No. 23, at 10. As part of that calculation, the parties stipulated that "Specific Offense Characteristic § 2B1.1(b)(1)(J) applies because the aggregate loss amount is greater than $2,500,000 but not more than $7,000,000. This Specific Offense Characteristic results in an increase of 18 levels." *Id.* The parties further agreed that neither Boye nor the Government would "argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level" nor would either party "seek or argue for any upward or downward departure, adjustment, or variance not set forth [in the Agreement]." *Id.* at 10, 11. The plea agreement additionally provided that Boye "agrees to make full restitution for all losses

. . . to Country A in the amount of $3,510,00." *Id.* at 3.[1]

Boye was sentenced by this Court on October 15, 2015 to a prison term of 72 months. Crim. No. 15-196, ECF No. 27. Boye was additionally ordered by the Court to pay restitution in the amount of $3,510,000, on which interest was waived. *Id.*

At the sentencing hearing, this Court first addressed the amount of restitution to be paid to Country A, acknowledging that the parties stipulated in the plea agreement to a restitution amount of $3,150,000 and noting that:

> In any event, there would still be the issue of offsetting [Country A] as to any kind of legitimate services that were actually provided by Mr. Boye. Nothing has really been presented to me at this point and it would be very difficult to determine whether there would be offsets to it based upon the services that he gave or not.
>
> Therefore, under the statute this would obviously complicate and prolong the sentencing process and would require additional hearings, and, therefore, balancing of the factors, that will not be awarded either.

Crim. No. 15-196, ECF No. 42, 8:1–12.

The parties then argued their sentencing positions. Boye's counsel argued for a sentence at the bottom of the Guidelines range—63 months. *Id.* at 16:17–19. In so arguing, counsel acknowledged Boye's criminal history and Boye's admission "that the company he created in order to submit this international tax consultant bid was fraudulent." *Id.* at 16:21 to 17:15. Nevertheless, Boye's counsel argued that a sentence at the bottom of the Guidelines range was appropriate because, ultimately, Country A benefited from the work product produced by Boye and Country A continues to use that work product. *Id.* at 17:16–25. Counsel argued that the fact that Boye completed the services contemplated by the contract distinguished this case from other

---

[1] Based on this stipulation, the Presentence Report also recommend a restitution amount of $3,150,000.

cases of fraud and that not crediting Boye for the services he provided would act as "somewhat of an unjust enrichment." *Id.* at 18:7 to 19:20.

The government argued for a sentence at the top of the Guidelines range. With respect to Boye's request that his sentence reflect a credit for the services he provided to Country A, the government contended that the provision of services did not mitigate Boye's crimes because had he not performed those services "he wouldn't have gotten the continuous payments under the contract." *Id.* at 27:2 to 27:12. The government also cited to the commentary on § 2B1.1 of the Sentencing Guidelines, which do not permit a defendant who made "false representations as to the licensing of particular professionals" to receive any credit for those services on the amount of loss. *Id.* at 27:13 to 27:21. The government contended that this rule applied here because

> there is a special kind of abuse of trust and a special kind of manipulation that occurs when an individual is posing as a trusted licensed accredited individual. Here he was posing as various licensed accountants who claimed were CPAs, other attorneys, and he needed to create an aura of expertise in order to get the contract, and then once he had the contract to ensure the continued payments in installments under the terms of the contract.

*Id.* at 27:23 to 28:6.

The Court rejected Boye's argument for a credit for legal services provided to Country A and in applying the § 3553(a) factors, rejected Boye's position:

> And the victim here, the country, the fact that they received services that you described as services that are still being used and good services *doesn't mitigate the crime*. One, it was of course important that you perform the services because otherwise Opus & Best would have been terminated if they weren't providing services, but moreover its not novel to me.

*Id.* at 37:12–19 (emphasis added). Based on this reasoning and application of the other § 3553(a) factors, the Court determined that a sentence at the top of the Guidelines range was appropriate.

On October 15, 2015, petitioner filed a Notice of Appeal. Crim. No. 15-196, ECF No. 32.

4

The government moved to enforce the appellate waiver set forth in the plea agreement and summary affirmance was granted by the Third Circuit on January 28, 2016. (ECF No. 1-1, at A124.)

### B. The § 2255 Motion

On September 28, 2016, Boye, acting through counsel, filed the present motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (ECF No. 1.) In his motion, Boye asserts three grounds for relief, each framed as a claim of ineffective assistance of counsel. (*See* ECF Nos. 1 & 1-1.) Petitioner first contends that his counsel was deficient because he did not argue for the application of Sentencing Guideline § 2B1.1, Application Note 3(E)(i), which provides that "Loss shall be reduced by . . . the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected" or advise the Court that Boye did not "pose" as a licensed professional and, thus, was entitled to a credit for legal services he provided to Country A on the amount of loss. (ECF No. 1-1, at 15–17.) As part of this claim, Boye asserts that his counsel should have presented to the Court evidence of the work product created by petitioner for Country A and advised the Court that Boye had retained Peter Chen, a licensed CPA to perform part of the contracted for work. (*Id.* at 17–18.)

Boye also argues that his counsel was ineffective by advising him to assent to the plea agreement which stipulated to an incorrect loss figure. Finally, Boye asserts that his counsel was deficient for not arguing for a lower restitution amount, again based on the fact that Country A received satisfactory legal services. In further support of his motion, Boye submitted to the Court two certifications which detail his interactions with counsel and the documentation Boye provided to counsel of the legal services that were rendered to Country A. (ECF Nos. 2, 7.)

5

The government filed an Answer opposing Boye's § 2255 motion, in which it argues that counsel's performance was not deficient and that Boye failed to meet his burden of showing that he was prejudiced by any alleged deficiency of counsel. (ECF No. 10.)

### III. STANDARD OF REVIEW

To grant relief on a federal prisoner's motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, the Court must find that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). A district court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* at 545–46 (quoting *Forte*, 865 F.2d at 62).

Boye's arguments are framed as claims for ineffective assistance of trial counsel. (*See* ECF No. 1.) The Sixth Amendment guarantees defendants effective assistance of counsel during critical portions of a criminal proceeding. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012). The Supreme Court, in *Strickland v. Washington,* 466 U.S. 668 (1984), articulated a two-prong burden for demonstrating the ineffectiveness of counsel: (1) that, considering all relevant circumstances, counsel's performance fell below an objective standard of reasonableness and (2) that the petitioner suffered prejudice as a result. *Id.* at 687–96; *see also Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 379, 382 (3d Cir. 2018); *Grant v. Lockett,* 709 F.3d 224, 232 (3d Cir. 2013).

In addressing the first prong, the petitioner "must identify the acts or omissions of

counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Counsel's strategic choices made after thorough investigation of the relevant law and facts are "virtually unchallengeable," while choices made with less than entirely thorough investigation "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91; *see also Rolan v. Vaughn,* 445 F.3d 671, 682 (3d Cir. 2006); *Gov't of V.I. v. Weatherwax,* 77 F.3d 1425, 1432 (3d Cir. 1996). Whether counsel acted in a manner that was deficient is measured by a standard of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 687–88; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove resulting prejudice. *See* 466 U.S at 693. Prejudice is generally found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale,* 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86,

7

111–12 (2011) (internal quotation marks and citation omitted). In the context of sentencing, prejudice exists where the inadequate performance affected the criminal defendant's sentence. *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007).

In the context of plea agreements, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012); *United States v. Jesus-Nunez*, 576 F. App'x 103, 105 (3d Cir. 2014). In considering whether the prejudice prong has been satisfied, the Court must consider the strength of the underlying evidence. *See Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010).

The *Strickland* Court made clear that a court may apply the two prongs in whatever order it sees fit. 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *see also Rainey v. Varner,* 603 F.3d 189, 201 (3d Cir. 2010).

## IV. DISCUSSION

### A. Credit Against Loss

Boye first contends that his counsel was ineffective because he failed to argue to the Court at sentencing that Boye is entitled to a credit on the calculation of loss for the satisfactory legal services he performed for Country A. This failure, Boye contends, impacted his sentence

because "the sentence was based primarily on the 'loss' that the District Court found." (ECF No. 1-1, at 26.)

Boye's position is untenable. Boye contends that his counsel should have objected to the amount of loss that was calculated for the purpose of determining his offense level under the Sentencing Guidelines. However, Boye's offense level was calculated and stipulated to by both Boye and the government in the plea agreement and, as part of that stipulated offense level, the parties agreed that "Specific Offense Characteristic § 2B1.1(b)(1)(J) applies because the aggregate loss amount if greater than $2,500,000 but not more than $7,000,000." Crim. No. 15-196, ECF No. 23 at 10. The parties further agreed "that the Court should sentence [Boye] within the Guidelines range that results from the total Guidelines offense level set forth below" and "that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level." *Id.* His counsel acted in accordance with that agreement by arguing that the legal services Boye provided to Country A entitled him to a sentence at the low-end of the Guidelines range under 18 U.S.C. § 3553. Had counsel argued for a lower offense level under Boye's theory, he would have breached the plea agreement, putting Boye at risk of a higher sentence. *See Bass v. United States*, No. 11-2205, 2011 WL 4962185, at *3 (D.N.J. Oct. 17, 2011).

Putting aside the potential breach of the plea agreement, the Court does not find that Boye's counsel was deficient by not arguing to the Court that the amount of loss should have included a credit for the legal services he provided to Country A. Sentencing Guideline § 2B1.1 governs, *inter alia*, crimes of fraud. *See* U.S. Sentencing Guidelines Manual, § 2B1.1 (U.S. Sentencing Comm'n 2003). Under that section, a defendant's base offense level will increase depending on the amount of loss suffered by the victim of the fraud. *Id.* § 2B1.1(b)(1). "Loss"

9

under this section "is the greater of actual loss or intended loss." *Id.*, Application Note 3(A). Generally, "[l]oss shall be reduced by . . . the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." *Id.*, Application Note 3(E)(i).

Nevertheless, the Application Notes set forth that in cases in which "services were fraudulently rendered to the victim by persons falsely posing as licensed professionals . . . loss shall be the amount paid for the . . . services . . . rendered . . . with no credit provided for the value of those [services]." *Id.*, Application Note 3(F)(v). In enacting this provision, the Commission noted that the rule was intended to reverse case law that permitted credit for services provided by persons posing as licensed professionals. U.S. Sentencing Guidelines Manual, appx. C, vol. II, at 179-80 (U.S. Sentencing Comm'n 2003). Moreover, "[t]he Commission determined that the seriousness of these offenses and the culpability of these offenders is best reflected by a loss determination that does not credit the value of the unlicensed benefits provided." *Id.* at 179-80. The provision further "eliminate[d] the additional burden that would be imposed on courts if required to determine the value of these benefits." *Id.* at 180.

Since the enactment of Application Note 3(F)(v) in 2003, few courts have considered its scope. Several courts have applied it in straightforward settings, *i.e.*, where a defendant poses as a licensed professional and he or she does not, in fact, maintain such a license. *See United States v. Bennett*, 453 F. App'x 395, 396–97 (4th Cir. 2011) (affirming district court decision not to credit amount of loss for work provided by defendant who posed as a licensed physician); *United States v. Kieffer*, 621 F.3d 825, 834 (8th Cir. 2010) (affirming district court decision not to credit amount of loss for legal services provided by defendant who posed as a licensed attorney); *United States v. Curran*, 525 F.3d 74, 82 (1st Cir. 2008) (affirming decision not to award any

10

credit to defendant naturopath who posed as a licensed physician for services rendered); *United States v. Aronowitz*, 151 F. App'x 193, 194–95 (3d Cir. 2005) (upholding district court's finding that victims suffered monetary loss where defendant dentist fraudulently charged for root canals performed by dental assistants). The Court is unaware of any case similar to that at bar where the defendant is a licensed attorney who poses as a firm of licensed attorneys and certified public accountants.

Counsel's decision not to object to the calculation of loss and Boye's offense level at sentencing was not unreasonable. The Application Note makes clear that where a defendant impersonates a licensed professional, he is not entitled to a credit for services provided when calculating the amount of loss at sentencing. U.S. Sentencing Guidelines, appx. C, vol. II, at 179-80. In the bid he fraudulently submitted to Country A as Opus & Best, Boye impersonated a firm of licensed attorneys and accountants. As such, under a plain reading of the Application Note, Boye would not have been entitled to a credit for the services rendered on the amount of Loss to Country A.

Nevertheless, Boye asserts that because he is a licensed attorney, he was not impersonating or "posing" as an attorney for the purposes of the Application Note. Boye contends he could not impersonate the attorneys and accountants purportedly employed by Opus & Best because they are not real people. Such a reading of the statute would render Application Note 3(F)(v) ineffective against defendants who, in addition to claiming they are a licensed professional, take on a new identity as well. Boye's crimes are exactly the type and purpose contemplated by the Commission to fall under Application Note 3(F)(v). Boye abused a position of trust when he defrauded Country A by submitting the fraudulent bids and thereafter, in his role as a legal advisor, recommending Country A hire Opus & Best. And, importantly,

11

calculating the value of the services rendered by Boye in perpetuating his fraud would require additional submissions and hearings to determine the value of the services provided by Boye—proceedings that would waste valuable judicial resources.

Furthermore, Boye has failed to show that he suffered any prejudice as a result of the alleged deficient performance of his counsel. Indeed, Boye never explicitly states how he was prejudiced by the alleged erroneous calculation of loss and argues only that but for counsel's errors, the result of his case would have been different. This is insufficient to show prejudice. Indeed, in the context of a claim for ineffective assistance of counsel at sentencing, a petitioner must show that he received a harsher sentence as a result of counsel's deficiencies. *See Glover v. United States*, 531 U.S. 198, 203–04 (2001) (noting that any increase in sentence that results from the deficient performance of counsel can constitute prejudice under *Strickland*); *see also Hankerson*, 496 F.3d at 310. Boye makes no argument that if a credit for services rendered was taken from the amount of loss, a lower offense level would have been calculated or that he would have been subjected to a lesser sentence. In other words, Boye does not set forth what the purported off-set amount would be such that his sentence would have been materially impacted.

Thus, as Boye has failed to meet his burden on either the deficiency or prejudice prong on his claim of ineffective assistance of counsel at sentencing, this claim is denied.

### B. Plea Agreement

Boye next argues that his counsel was further deficient "in counseling defendant to stipulate (in the plea agreement) to a 'loss' figure that contravenes . . . governing law." (ECF No. 1-1, at 20.) As discussed in the preceding section, the amount of loss used to determine Boye's offense level was not in violation of the Sentencing Guidelines and, indeed, properly applied Application Note 3(F)(v) by not providing Boye a credit for legal services provided to

12

Country A while impersonating a licensed professional. Just as counsel was not deficient in not objecting to this calculation of loss at sentencing, he was not deficient in advising Boye to stipulate to the amount of loss in the plea agreement. Thus, this claim for ineffective assistance of counsel must also fail.

Equally fatal to Boye's claim of ineffective assistance related to the plea agreement is Boye's failure to allege any prejudice that resulted from this alleged deficiency of counsel. A defendant may be prejudiced by his counsel's erroneous advice to enter into a plea agreement where he demonstrates that there is a reasonable probability that he would have gone to trial had he been correctly advised. *Hill*, 474 U.S. at 59. Boye makes no such allegation and, indeed, does not deny his guilt for the crimes committed. At no point in his briefing does Boye assert that he would have proceeded to trial on these charges.

Because Boye cannot show that his counsel was deficient in advising him to assent to the plea agreement or that he prejudice by that advice, this claim for relief is denied.

**C. Calculation of Restitution Award**

Finally, Boye argues that his counsel was deficient by not arguing that the restitution amount should have been limited to Country A's "actual loss." (ECF No. 1, at 21). Specifically, Boye contends that the restitution amount should have included credit for legal services provided to Country A.

Even if petitioner can demonstrate that this alleged error meets the *Strickland* standard, attacks on an award of restitution are not cognizable on a § 2255 motion to vacate or set aside a petitioner's sentence. The plain language of § 2255 "indicates that the statute only applies to '[a] prisoner in custody . . . claiming the right to be released.'" *United States v. Trimble*, 12 F. Supp. 3d 742, 745 (E.D. Pa. 2014) (alterations in original) (quoting 28 U.S.C. § 2255)). The Third

13

Circuit has held that an order to pay restitution "is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas corpus statutes.'" *Id.* (quoting *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003)); *see also United States v. Ross*, 801 F.3d 374, 380–81 (3d Cir. 2015).

This reading of § 2255 applies even where, as here, petitioner brings other claims challenging his custody. *Kaminsky v. United States*, 339 F.3d 84, 87–89 (2d Cir. 2003). As the Second Circuit set forth:

> There is . . . no reason why the presence of a plausible claim against a custodial punishment should make a noncustodial punishment more amenable to collateral review than it otherwise might be. . . . [T]he mere fact that the sentencing court chose to impose incarceration on a defendant in addition to restitution does not, as to the restitution order, distinguish that defendant from someone who, having been convicted, received a punishment that did not include any custodial element.

*Id.* at 89. The same reasoning applies where a challenge to a restitution order is brought as an ineffective assistance of counsel claim. *Trimble*, 12 F. Supp. 3d at 746 ("[A] challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim is also not cognizable in a habeas petition because it does not seek relief from custody."); *see also Awe v. United States*, No. 15-8155, 2017 WL 1157865, at *4 (D.N.J. Mar. 27, 2017) (collecting cases).

Accordingly, Boye's claim for ineffective assistance of counsel related to the calculation of restitution is dismissed as it is not cognizable as a claim under § 2255.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a litigant may not appeal a final order in a § 2255 proceeding unless the judge or a circuit justice issues a certificate of appealability ("COA"). That section further directs courts to issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* 28 U.S.C. § 2255(d). "A

petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In this case, the Court denies a certificate of appealability because jurists of reason would not find it debatable that Boye has failed to make a substantial showing of the denial of a constitutional right.

## VI. CONCLUSION

For the foregoing reasons, Boye's § 2255 motion will be denied on the merits. Although courts considering § 2255 motions are generally directed to hold evidentiary hearings, it is apparent from the arguments before the Court and the record of the underlying criminal proceeding that, regardless of the evidence adduced at such a proceeding, Boye would not be entitled to any relief based on his motion. *See Booth*, 432 F.3d at 545. An appropriate order will be entered.


DATED: November 20, 2018                     Freda L. Wolfson
                                             FREDA L. WOLFSON
                                             United States District Judge